UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

MARK BARANEK,

                Plaintiff-Appellant,

                -against-

KARIN BARANEK,

                Defendant-Appellee.

----------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-5090 (PKC)

PAMELA K. CHEN, United States District Judge:

The present appeal in this adversary action arises out of Defendant-Appellee Karin Baranek's (the "Debtor") bankruptcy. It centers on her potential "future debt" to ex-husband, *pro se* Plaintiff-Appellant Mark Baranek (the "Creditor"), in a pending lawsuit before the New York State court pertaining to the home that the couple once shared. (Dkt. No. 1-19, at 1.)[1]

The Creditor appeals from the Bankruptcy Court's (i) July 2, 2012 Decision, dismissing on summary judgment the Creditor's Complaint; (ii) first July 25, 2012 Decision, denying reconsideration of the summary judgment decision; and (iii) second July 25, 2012 Decision, imposing $7,167.40 in sanctions on the Creditor for filing his Complaint.[2] *See* Order Granting Motion for Summary Judgment, *Baranek v. Baranek*, No. 11-9497 (Bankr. E.D.N.Y. July 2, 2012), ECF No. 20 ("*July 2, 2012 Decision*"); Order Denying Motion to Reconsider, *Baranek*,

---

[1] References to the record on appeal are based on the ECF pagination and not on the individual documents' internal pagination.

[2] This Court has jurisdiction over this appeal from the Bankruptcy Court's "final judgments, orders, and decrees," pursuant to 28 U.S.C. § 158(a)(1).

No. 11-9497 (Bankr. E.D.N.Y. July 25, 2012), ECF No. 30; Order Regarding Sanctions Under Bankruptcy Rule 9011(b), *Baranek*, No. 11-9497 (Bankr. E.D.N.Y. July 25, 2012), ECF No. 29 ("*Second July 25, 2012 Decision*"); (*see also* Dkt. No. 6, at 11 ("I, Mark Baranek, Plaintiff-Appellant, I am pleading to this court to overturn the decision by Justice Alan S. Trust dated July 2, 2012 & July 25, 2012.")). This Court AFFIRMS the Bankruptcy Court's decisions in their entirety, for the reasons set forth below.

I. Background[3]

In April 1981, the Debtor and the Creditor were married in Nassau County. Debtor's Statement ¶ 1; (Dkt No. 1-10, at 64). About six years into the marriage, the couple purchased a four-bedroom, Cape Cod-style home in Suffolk County (the "home"). (Dkt. No. 1-9, at 58-59; Dkt. No. 6, at 42 ¶ 6.) They raised their three children together: Christina, born in 1987; Jessica, born in 1989; and Frank, born in 1996. (Dkt No. 1-10, at 65.)

On November 17, 2003, the Creditor commenced an action for divorce (the "divorce action") before the Supreme Court of New York, Suffolk County (the "New York State Supreme Court"), *Baranek v. Baranek*, No. 03-27691 (Sup. Ct. Suffolk Cnty.). Debtor's Statement ¶ 1; (Dkt. No. 7-5, at 40-41). In the Creditor's Statement of Net Worth, he reported that the Debtor

---

[3] This Court derives most of the following facts from the evidence designated for the record on appeal. (*See* Dkt. Nos. 1; 6; 7.) Some facts are taken from the Debtor's statement of undisputed facts filed with the Bankruptcy Court in this action, denoted as "Debtor's Statement," *see* Motion for Summary Judgment, Separate Statement of Undisputed Facts, *Baranek*, No. 11-9497 (Bankr. E.D.N.Y. Jan. 18, 2012), ECF No. 12-2. Under the Bankruptcy Court's local rules, any facts contained in such a statement "will be deemed to be admitted by [the Creditor] unless controverted by the statement required to be served by [the Creditor]." Local Bankruptcy Rule for the Eastern District of New York 7056-1. Where appropriate, this Court has construed these facts in the light most favorable to the Creditor, as the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970) (Harlan, J.).

was working as an "Escort," making a monthly income in an amount "to be determined."[4] (Dkt. No. 1-9, at 1, 6.) By contrast, in the Debtor's Statement of Net Worth, she reported herself as a "House Wife," making no monthly income. (Dkt. No. 1-8, at 52, 58.)

As reported in a court-ordered home study from May 2004, throughout most of the marriage, the Creditor worked full-time; the Debtor either was a stay-at-home mother or worked part-time.[5] (Dkt. No. 1-9, at 56.) The home study also reported that, in light of the Debtor's inability to secure full-time employment:

> *[t]he Baraneks agreed that [the Debtor] would become an 'escort'* meaning that she would connect with people via the internet or in bars and get paid for sexual activities. [The Debtor] admits doing this but feels she was coerced by [the Creditor]. [The Creditor] constantly badgered her to meet clients and make money. . . . [The Creditor] claims he thought it would be a short term way to make quick money until [the Debtor] could find steady full time employment.[6]

(*Id.* (emphasis added).) Finally, in around April 2004, the Debtor found a full-time job as a teaching assistant. (*Id.* at 54, 57.)

---

[4] Unfortunately, as the Creditor's claims in this action are based, in part, on alleged omissions by the Debtor during the divorce action about her purported income as an escort, this Court must delve into these details on appeal.

[5] The Creditor claims that he was somehow defrauded in the divorce action, based on the alleged omission of the fact that the Debtor was still the "sole owner and operator of her own corporation Freedom of Speech Inc." (Dkt. No. 1-2 ("Creditor's Compl."), at 1); *see infra* at Section III.A.1. This corporation, however, was (i) registered in January 1993 to the couple's home address, not to any specific individual, and (ii) dissolved as of September 1997. Motion for Summary Judgment, Ex. H, *Baranek*, No. 11-9497 (Bankr. E.D.N.Y. Jan. 18, 2012), ECF No. 12-10.

[6] In this action, the Creditor has adduced as evidence what appear to be notes about the clients of an unspecified escort service, presumably to show that the Debtor was an escort. (Dkt. No. 1-10, at 1-27.) Not only is the actual author of these notes unknown, but these notes are also undated. Aside from aiding in the Creditor's apparent efforts to embarrass the Debtor, these notes do not substantiate his claim that he was somehow defrauded in the divorce action, based on the alleged omission of the fact that the Debtor was supposedly still making money as an escort. (Creditor's Compl., at 2); *see infra* at Section III.A.1.

The home study also indicated that the home was in a "state of disrepair," and soon to be in foreclosure due to the couple's failure to make their $1900 monthly mortgage payments since December 2003. (*Id.* at 58.) The Creditor told the individual conducting the home study that "he is staying in the house until it is foreclosed but he is also willing to split the bills 50/50 so they can stay in the house and give the house to the children." (*Id.* at 59.)

On October 7, 2004, at the inquest in the divorce action, the Debtor and the Creditor read into the record their stipulation of settlement (the "Stipulation"), which the New York State Supreme Court approved. (Dkt. No. 7-5, at 3, 24.) The couple represented that the Stipulation "will be incorporated but not merged . . . [i]nto the final judgment of divorce with the understanding however that it shall survive as an independent contract and agreement between the parties." (*Id.* at 12.) The Creditor himself acknowledged that he agreed to be bound by the Stipulation, and denied having been coerced into doing so. (*Id.* at 18-19.)

The Stipulation provided, in relevant part:

> The parties stipulate and agree that [the Creditor] shall, upon presentation to him, duly execute and tender a bargain and sale deed with covenants and all ancillary documents required for transferring title to the marital residence to [the Debtor] in full satisfaction of all claims of equitable distribution. . . .
>
> [The Debtor] shall satisfy the outstanding mortgage arrears, interest and penalties and debts against the marital home by selling it or otherwise refinancing or assuming and removing [the Creditor's] name from the mortgage.

(*Id.* at 3-4.) The Debtor's counsel confirmed, in open court, that the Debtor would sell the home "very quickly" after the agreed-upon transfer. (*Id.* at 17.)

On December 7, 2004, pursuant to the Stipulation, the Creditor transferred the home to the Debtor in "full satisfaction of all claims of equitable distribution" in the divorce action. (*Id.* at 3; Dkt. No. 7-6, at 1-3.) Subsequently, on December 29, 2004, the Debtor transferred the

4

home to her parents, Oskar Balthasar and Annelore Balthasar, in consideration for $225,000, thereby eliminating the couple's outstanding obligations on the home. Debtor's Statement ¶ 10.

On September 19, 2005, the New York State Supreme Court entered a Judgment of Divorce and related Findings of Fact and Conclusions of Law. (Dkt. No. 7-5, at 36-43.) The divorce judgment indicated that the Stipulation "shall survive and shall not be merged into this judgment, and the parties are hereby directed to comply with all legally enforceable terms and conditions of said agreement as if such terms and conditions were set forth in their entirety herein." (*Id.* at 38-39.)

Both before and after the divorce judgment, the Creditor tried *unsuccessfully* to vacate the Stipulation, by filing motions in the divorce action on December 10, 2004 and November 4, 2005 and by commencing a separate action in New York State Supreme Court on September 11, 2006. Debtor's Statement ¶¶ 9, 12-13, 14. On May 7, 2007, the Creditor made his fourth attempt: this time, by commencing a separate action against the Debtor *and* her parents, seeking to rescind and/or receive damages for the Debtor's subsequent transfer of the home to her parents (the "rescission action"). (Dkt. No. 6, at 44 ¶¶ 17-23.) The Creditor's allegation was that he had stipulated to transfer the home to the Debtor "under duress" in the divorce action; therefore, the Debtor's subsequent transfer was improper and constituted a conspiracy to deprive him of the "rights with respect to said property." (*Id.* at 42-43 ¶¶ 9, 14-16.) The May 2007 rescission action is still before the New York State Supreme Court, though the court recently granted summary judgment to the Debtor's parents dismissing the claims against them. Decision, *Baranek v. Balthasar*, No. 07-14342 (Sup. Ct. Suffolk Cnty. July 3, 2013).

On July 20, 2011, the Debtor filed for bankruptcy under Chapter 7 of the Bankruptcy Code. *See* Voluntary Petition, *In re Baranek*, No. 11-75177 (Bankr. E.D.N.Y. July 20, 2011),

ECF No. 1 ("Petition"). In the Debtor's petition, on her list of "Creditors Holding Unsecured Nonpriority Claims," she named the Creditor, citing only his claim for "[p]ossible liability arising from lawsuit" against her, which was "contingent" and "disputed."[7] Petition, Schedule F, at 2.

The Bankruptcy Court appointed Andrew Thaler as the trustee (the "Trustee"). Dkt. Entry, *In re Baranek*, No. 11-75177 (Bankr. E.D.N.Y. July 20, 2011). On September 2, 2011, the Trustee reported, "I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and there is no property available for distribution from the estate over and above that exempted by law." Dkt. Entry, *In re Baranek*, No. 11-75177 (Bankr. E.D.N.Y. Sept. 2, 2011). The court subsequently discharged the Debtor's debts. Order Discharging Debtor, *In re Baranek*, No. 11-75177 (Bankr. E.D.N.Y. May 9, 2012), ECF No. 13.

On November 16, 2011, in connection with the Debtor's bankruptcy, the Creditor commenced this action, claiming that any debt which could result from the rescission action was subject to 11 U.S.C. §§ 523(a)(2) and 548 (respectively, "Section 523(a)(2)" and "Section 548"). (Creditor's Compl., at 2, 8.) The Creditor specifically alleges that:

- With respect to the Section 523(a)(2) claim, the Debtor secured the Creditor's Stipulation to transfer the home through her filing of "falsified discovery documents in a divorce case,"[8] which omitted the fact that she (i) "is the sole owner and operator

---

[7] Under the Bankruptcy Code, "debt" is "liability on a claim"; a "claim" includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A), (12); *accord In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2d Cir. 1991) (distinguishing between discharging an "unmatured claim on which [the claimant] could one day sue," which is covered by the Bankruptcy Code, and one on which the claimant "could never sue," which is not).

[8] Even construing the Creditor's *pro se* Complaint liberally, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam), to allege that he stipulated to

- of her own corporation Freedom of Speech Inc.," (ii) "owns and operates her own independent escort service," and (iii) "has judgments of large sums of money filed against individuals"; and

- With respect to the Section 548 claim, the Debtor subsequently engaged in the "unlawful and fraudulent transfer of the marital house" to her parents.

(Creditor's Compl., at 1-2; *see also* Dkt. No. 1-19, at 1 ("I filed an adversary proceeding against [the Debtor] on her bankruptcy in this court because I felt the future debt from the marital house that is still being litigated in front of [New York State Supreme Court] Justice Joseph C. Pastoressa in Riverhead, is not dischargeable. The house was obtained by [the Debtor] through the filing of fraudulent divorce documents, and then quickly sold it [sic] to her parents prior to the divorce being finalized, this is unlawful.").)

On January 18, 2012, the Debtor sought summary judgment dismissing the Creditor's claims. Motion for Summary Judgment, *Baranek*, No. 11-9497 (Bankr. E.D.N.Y. Jan. 18, 2012), ECF No. 12. On July 2, 2012, the Bankruptcy Court granted the Debtor's motion, concluding, among other things, that:

- The Creditor had not adduced any evidence showing that the alleged omissions in documents from the divorce action somehow "induced" his reliance when he accepted the Stipulation, for purposes of the Section 523(a)(2) claim; and

- The Creditor lacked "standing," for purposes of the Section 548 claim.

*July 2, 2012 Decision*, at 8, 11-12. After dismissing these claims, the court indicated that it could only "draw the conclusion that this action was initiated for some improper purpose," as the Creditor "asserts various baseless accusations against his former spouse," as well as other

---

transfer the home through the Debtor's filing of similarly "falsified and perjured bankrupcty [sic] documents" (Creditor's Compl., at 2), such an allegation would not be a proper basis for a Section 523(a)(2) claim, because, as the Bankruptcy Court found, the Creditor had already transferred the home by that point. *See July 2, 2012 Decision*, at 9 (ruling, with respect to any "alleged 'falsified application for bankruptcy,'" that there was no "indication that [the Creditor] reasonably relied on same to grant [the Debtor] any credit").

"wholly irrelevant" accusations that "appear to have been raised simply to harass, delay or needlessly add to the cost of the litigation." *Id.* at 14-15. The court directed the Creditor to submit an affidavit demonstrating why it should not sanction him for commencing this "frivolous action." *Id.* at 16.

On July 25, 2012, although the Creditor submitted such an affidavit, the Bankruptcy Court still ruled that he "failed to demonstrate why he should not be sanctioned under Bankruptcy Rule 9011." *Second July 25, 2012 Decision*, at 4. This affidavit did not "address[] any of the determinations this Court made as to the frivolous nature of [the Creditor's] complaint." *Id.* at 6. As such, the court imposed $7,167.40 in sanctions on the Creditor, which represented "reasonable and necessary attorneys' fees and costs" that the Debtor accrued in defending against this action. *Id.* at 7.

II.  Standard of Review

This Court reviews *de novo* the Bankruptcy Court's grant of summary judgment. *See, e.g.*, *In re Corcoran*, 246 B.R. 152, 158 (E.D.N.Y. 2000) (Raggi, J.) (citing, among other cases, *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 67 (2d Cir. 1998)). The same standards applicable to a summary judgment motion under Federal Rule of Civil Procedure ("FRCP") 56 are also applicable to such a motion in an adversary action before the Bankruptcy Court. *In re Corcoran*, 246 B.R. at 158 n.3; *In re DPH Holdings Corp.*, No. 12 Civ. 9292, 2013 WL 3948683, at *4 (S.D.N.Y. Aug. 1, 2013); *In re Ferraro*, Nos. 00-63241, 03-80476, 2005 WL 3555948, at *2 (N.D.N.Y. Dec. 28, 2005); *see* Fed. R. Bankr. P. 7056 ("[FRCP 56] applies in adversary proceedings[.]").

As such, the Debtor, as the moving party, is entitled to summary judgment if (i) she satisfies her initial burden, by showing an absence of any genuine factual issue as to at least one element for each of the Creditor's claims, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(Rehnquist, J.) ("The moving party is entitled to a judgment as a matter of law [on summary judgment] because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." (quotations omitted)); *and* (ii) the Creditor cannot otherwise "show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial," *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309 (2d Cir. 1994). Though the Creditor, as the non-moving party, does not bear the initial burden, he "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998).

At the same time, this Court reviews for abuse of discretion the Bankruptcy Court's imposition of sanctions on the Creditor under Federal Rule of Bankruptcy Procedure ("FRBP") 9011. *See, e.g.*, *In re Dubrowsky*, 244 B.R. 560, 578 (E.D.N.Y. 2000) (Spatt, J.). The Bankruptcy Court has complete discretion to impose these sanctions for filing an adversary action, where such an action is "objectively frivolous," meaning that "there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *In re M.A.S. 284 Parking Corp.*, No. 99-5042, 1999 WL 1295816, at *2 (2d Cir. Dec. 23, 1999) (quotations omitted).

III. <u>Discussion</u>

    A. *Summary Judgment*

        1. Section 523(a)(2) Claim

Section 523(a)(2) contains the two specific exceptions to dischargeability in bankruptcy for "debts traceable to falsity or fraud or to a materially false financial statement." *Field v. Mans*, 516 U.S. 59, 64 (1995) (Souter, J.). These exceptions reflect Congress's desire to cabin

dischargeability to "the so-called 'honest debtor,' such that certain debts incurred, for example, by fraud are not dischargeable in bankruptcy." *In re Bogdanovich*, 292 F.3d 104, 107 (2d Cir. 2002).

The first exception, Section 523(a)(2)(A), is for debt "obtained by . . . false pretenses, a false representation, or actual fraud,[9] other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The second exception, Section 523(a)(2)(B), is for debt "obtained by . . . use of a statement in writing . . . that is materially false; . . . respecting the debtor's or an insider's financial condition; . . . on which the creditor to whom the debtor is liable . . . reasonably relied; and . . . that the debtor caused to be made or published with intent to deceive." *Id.* at § 523(a)(2)(B).

Regardless of which exception applies to the Section 523(a)(2) claim in this action,[10] the Creditor would still have to show, as a fundamental matter, that he, in fact, relied on the alleged

---

[9] "The operative terms in § 523(a)(2)(A), . . . 'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art. They are common-law terms, and[] . . . they imply elements that the common law has defined them to include." *Field*, 516 U.S. at 69. As far as their basic elements are concerned, claims based on these terms have no "significant difference"; importantly for this action, any such claims require some form of reliance. 3 Norton Bankr. L. & Prac. § 57:15 & n.1 (3d ed. 2013); *see Field*, 516 U.S. at 66, 68 (holding that courts "routinely requir[e] intent, reliance, and materiality before applying § 523(a)(2)(A)" and that "[n]o one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by[]' [in § 523(a)(2)(A)]"); *see also Fellows, Read & Assocs., Inc. v. Rieder*, 194 B.R. 734, 737 (S.D.N.Y. 1996) ("To bar discharge from a debt under Section 523(a)(2)(A), a creditor must prove . . . (1) the debtor made a representation; (2) he knew the representation was false; (3) he intended to deceive the creditor; (4) the creditor relied on the representation; and (5) his reliance was the proximate cause of his damage." (citations omitted)), *aff'd*, 116 F.3d 465 (2d Cir. 1997).

[10] This Court recognizes the key difference between these exceptions: the first exception does not apply to statements regarding "the debtor's . . . financial condition," whereas the second exception *only* applies to statements regarding "the debtor's . . . financial condition." *Field*, 516 U.S. at 66; *see also In re Kiernan*, 17 B.R. 362, 365 (Bankr. S.D.N.Y. 1982) (same); 3 Norton Bankr. L. & Prac., *supra*, § 57:18 n.6 (same).

omissions in documents from the divorce action when he accepted the Stipulation. *See Field*, 516 U.S. at 66 (recognizing that both exceptions require some "level of justification . . . *above mere reliance in fact*" (emphasis added)); *see also* 3 Norton Bankr. L. & Prac., *supra*, § 57:16 ("Within the fraud exceptions to discharge, the element most often litigated is reliance—i.e., the extent to which the creditor changed position based on the debtor's misrepresentation."). As the Bankruptcy Court found, the Creditor has not come forward with a shred of evidence suggesting that he actually relied on these alleged omissions. *July 2, 2012 Decision*, at 8. Rather, the available evidence suggests that the Creditor's "version of the events" recounting his reliance on these alleged omissions is, at best, "wholly fanciful." *D'Amico*, 132 F.3d at 149.

The evidence establishes that the Creditor did not rely on any alleged omissions about the Debtor's continued employment as an escort. There is no support for the Creditor's supposed ignorance about whether his wife was still working as an escort during the divorce action. As the

---

This Circuit's case law remains relatively unsettled with respect to determining whether disputed statements involve "the debtor's . . . financial condition," such that one exception applies over the other. The Second Circuit has identified a "sharp[] split" among courts involving the correct interpretation "[i]n determining whether a statement relates to a debtor's financial condition," but declined to "take[] a position" on this issue of first impression. *In re Bogdanovich*, 292 F.3d at 112-13 (collecting cases).

In certain cases, this determination can be critical to the creditor's claims. Claims invoking the first exception may only require "justifiable reliance," while those invoking the second exception always require "reasonable reliance." *See Field*, 516 U.S. at 61 & 70 n.8 (holding that, for Section 523(a)(2)(A) claims based on actual fraud, the standard is the "less demanding one of justifiable reliance," and noting that "[a]lthough we do not mean to suggest that the requisite level of reliance would differ if there should be a case of false pretense or representation but not of fraud, there is no need to settle that here"); 3 Norton Bankr. L. & Prac., *supra*, § 57:15 ("[U]nder Code § 523(a)(2)(A), many courts require only a showing that the creditor's reliance be actual, not necessarily reasonable."). In addition, claims invoking the second exception must be based on written statements. *See* 3 Norton Bankr. L. & Prac., *supra*, § 57:15 ("[T]he misrepresentation under Code § 523(a)(2)(A) need not be in writing, but the false financial statement [under Code § 523(a)(2)(B)] must be in writing."). Here, however, this Court need not make this determination, because the Creditor has failed to demonstrate any reliance, reasonable or otherwise, which is fundamental to the invocation of either exception.

couple told the individual conducting the home study, throughout their marriage, they jointly made decisions about the Debtor's work outside the home, including the decision that the Debtor would work as an escort until she could find a full-time job. Furthermore, during the divorce action, the Debtor found a full-time job as a teaching assistant, of which the Creditor certainly was aware. In the end, whether the Debtor was still working as an escort during the divorce action—for which there is no support—is irrelevant, since the Creditor *assumed* that she was, as evidenced by the financial statement he filed in the divorce action, in which he reported that his wife was an "Escort" (Dkt. No. 1-9, at 1). *See supra* at Section I. Thus, it is clear from the evidence that the Creditor did not rely on any alleged omissions by the Debtor regarding her purported income as an escort.

Similarly, the evidence establishes that the Creditor did not rely on any alleged omissions about the Debtor's ownership of a corporation, which was no longer in existence by the time of the divorce action. The corporation was not registered to the Debtor, but rather to the Debtor's *and Creditor's* home at that time. *See supra* note 5. Knowledge about the corporation's dissolution, therefore, was equally attributable to the Creditor, as well as the Debtor.

Lastly, the Creditor's claim that the Debtor allegedly failed to report her entitlement to unspecified money judgments is not evidenced anywhere.

In sum, the evidence adduced by the parties, even viewed favorably to the Creditor, supports only one conclusion: the Creditor stipulated to transfer the home not because he incorrectly believed that the Debtor had discontinued her employment as an escort, dissolved a corporation, and/or did not have other money judgments to which she was entitled, but because the Stipulation allowed him to satisfy all equitable distribution claims in the divorce action while

disposing of an asset that the couple could no longer afford. The Creditor's supposed reliance on any alleged omissions by the Debtor, as a reason for the Stipulation, is simply fiction.

Accordingly, this Court AFFIRMS the dismissal of the Section 523(a)(2) claim.

    2. Section 548 Claim

Section 548, entitled "Fraudulent transfers and obligations," provides, in relevant part, that:

> *The trustee* may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, . . . if the debtor voluntarily or involuntarily . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A) (emphasis added).

Typically, as evidenced by the express statutory reference to the "trustee," solely the trustee or similar court-appointed representative for the bankruptcy, not the creditor, has standing to assert Section 548 claims to avoid allegedly fraudulent transfers. *See, e.g.*, *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 655, 656-57 (Bankr. E.D.N.Y. 1988) ("Standing to invoke the avoidance powers contained in §§ 544(b) and 548 rests with the trustee by the express provisions of those statutes. . . . As a rule, individual creditors . . . lack the authority to institute avoidance actions." (collecting cases)); *accord In re Pointer*, 952 F.2d 82, 87-88 (5th Cir. 1992) ("In general, . . . only trustees and debtors-in-possession, *not* creditors, have standing to invoke avoidance powers." (emphasis in the original) (collecting cases)); *In re Lauer*, 98 F.3d 378, 388 (8th Cir. 1996) ("Section 548 by its terms provides that certain transfers by the debtor prior to bankruptcy may be voided only by '*the trustee*.'" (emphasis in the original; citation omitted)); *In re Parmetex, Inc.*, 199 F.3d 1029, 1031 (9th Cir. 1999) ("[A] trustee must generally file an avoidance action under Chapter 7[.]"). "[T]his special grant of authority is made to the trustee because the trustee is charged with acting in a fiduciary capacity vis-à-vis the creditors of the

debtor's estate." *In re Metro. Elec. Mfg. Co.*, 295 B.R. 7, 12 (Bankr. E.D.N.Y. 2003) (applying 11 U.S.C. § 544(b), another section that accords "avoidance power" to the trustee).

There are two recognized exceptions. The creditor may have standing to assert Section 548 claims, where (i) the trustee of the debtor's estate either (a) "unjustifiably" declines to assert these claims or (b) "consent[s]" to the creditor asserting these claims; and (ii) the extension of standing to the creditor is otherwise "in the best interest of the estate." *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70-71 & n.7 (2d Cir. 2002) (extending *In re STN Enters.*, 779 F.2d 901 (2d Cir. 1985) and *In re Commodore Int'l Ltd.*, 262 F.3d 96 (2d Cir. 2001) to the standing of individual creditors in Chapter 7 bankruptcies).

Here, the Bankruptcy Court correctly found that the Creditor lacks standing to assert the Section 548 claim. *July 2, 2012 Decision*, at 11-12. The Creditor cannot establish that he satisfies either of the exceptions to the typical rule on standing for Section 548 claims. First, the Trustee did not "unjustifiably" decline to commence an action under Section 548, nor did he "consent" to the Creditor doing so. *In re Housecraft Indus. USA, Inc.*, 310 F.3d at 70. Indeed, it would have been frivolous for the Trustee to do either, since the substance of any such action would have been the same as the Creditor's multiple unsuccessful actions in New York State Supreme Court. Rather than pursue or agree to allow the Creditor to pursue such an action, the Trustee reasonably determined, after a "diligent inquiry," that "there is no property available for distribution from the estate over and above that exempted by law." Dkt. Entry, *In re Baranek*, No. 11-75177 (Bankr. E.D.N.Y. Sept. 2, 2011). *See supra* at Section I.

Second, the extension of standing to the Creditor to allow him to bring a clearly frivolous action under Section 548 would not be in the "best interest of [the Debtor's] estate." *In re Housecraft Indus. USA, Inc.*, 310 F.3d at 70.

14

Accordingly, this Court AFFIRMS the dismissal of the Section 548 claim.

*B. Sanctions*

Under FRBP 9011, the Bankruptcy Court may, "[o]n its own initiative," impose "an appropriate sanction upon . . . parties that have," among other things, "present[ed] to the court" a pleading "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Bankr. P. 9011(b)-(c).

Applying a deferential "abuse of discretion" standard, this Court concludes that the Bankruptcy Court appropriately decided to impose sanctions on the Creditor, after determining that the Creditor commenced this action "for some improper purpose." *Second July 25, 2012 Decision*, at 3. The Bankruptcy Court principally based its determination on the fact that, in support of the claims in this action, the Creditor raised allegations which were unsupported by any evidence and/or produced evidence irrelevant to the allegations raised. *Id.* at 4-5.

This Court's review of the record confirms as much. For instance, with respect to the allegation that the Debtor was still working as an escort during the divorce action, the Creditor does not adduce any evidence, except for a home study stating that the couple once agreed that the Debtor would engage in this type of work and undated client notes of unknown origin, neither of which supports the allegation. *See supra* at Section I & note 6. The only reason that the Creditor has to submit this evidence is to humiliate and harass the Debtor. As such, this Court concludes that the Bankruptcy Court acted within its discretion to sanction the Creditor for commencing this "objectively frivolous" action, *In re M.A.S.*, 1999 WL 1295816, at *2, where its only apparent purpose is to embarrass and saddle the already-bankrupt Debtor with burdensome and unnecessary costs.

Accordingly, this Court AFFIRMS the imposition of sanctions on the Creditor.

IV.     Conclusion

This Court AFFIRMS on appeal the Bankruptcy Court's decisions, granting summary judgment to the Debtor with respect to the Creditor's Complaint and imposing $7,167.40 in sanctions on the Creditor for filing his Complaint. The Clerk of the Court shall enter judgment and terminate this appeal.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: September 11, 2013
       Brooklyn, New York